IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| United States of America ) | |
| ) | |
| ) | Cr. No.: 8:18-00847-HMH-1 |
| vs. ) | |
| ) | |
| Megan Terrance Ramon White, ) | **OPINION & ORDER** |
| ) | |
| Movant. ) | |

This matter is before the court on Megan White's ("White") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the court dismisses White's § 2255 motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2019, White pled guilty pursuant to a plea agreement to one count of armed bank robbery in violation of 18 U.S.C. § 2113(a). On July 30, 2019, White was sentenced one hundred eighty months' imprisonment.

White appealed his conviction. On April 2, 2020, the United States Court of Appeals for the Fourth Circuit dismissed the appeal. United States v. White, No. 19-4595 (4th Cir. Apr. 2, 2020) (unpublished). White filed the instant § 2255 motion on June 11, 2020[1], alleging ineffective assistance of counsel claims. This matter is ripe for review.

### II. DISCUSSION OF THE LAW

In order to successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, White must demonstrate that his counsel's performance fell below an

---

[1] See Houston v. Lack, 487 U.S. 266 (1988).

1

objective standard of reasonableness and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689 (citation omitted). With respect to the second prong, White must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

White alleges that his counsel was ineffective in failing to inform the court that (1) White "contacted the Bank Robbery Division" and "Special Agent Fitzgerald promised me on video that I would get a decent sentence," (2) he was incompetent when he was committing the crimes in this case, (3) he suffered from a severe mental illness, and (4) he had a private, personal issue to address with the court regarding prior abuse. (§ 2255 Mot. generally, ECF No. 82.) Further, White alleges that his counsel was ineffective in allowing discussion of his cooperation while other inmates were present in the courtroom and in failing to verify his prior convictions and correct errors in the record. (Id. at 8, 9 ECF No. 82.)

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects . . . including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) (internal quotation marks and citations omitted). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974) (citations and internal quotation marks omitted). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from

counsel was not within the range of competence demanded of attorneys in criminal cases." Id. at 30 (citation and internal quotation marks omitted); Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.") (citing McMann v. Richardson, 397 U.S. 759, 770-71 (1970)).

White "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690. In conclusory fashion, White alleges that his counsel was ineffective.

Prior to entering his guilty plea, White underwent a mental health evaluation. After a competency hearing, White was found competent to proceed in his case. (Competency H'rg Tr., ECF No. 66.) At his competency hearing, White stated that he had no objections to the mental health report finding him competent. (Id. at 4, ECF No. 66.) Further, the Rule 11 guilty plea colloquy reflects that White knowingly and voluntarily pled guilty. At his plea hearing, White stated under oath that he had enough time to discuss the matter with his attorney and had no complaints of his attorney. (Guilty Plea Tr. 12, ECF No. 70.) White further indicated that he understood the charge against him, the potential penalties, the elements, and the rights that he was waiving by pleading guilty. (Id. 14-23, ECF No. 70.) With respect to White's competency, the court found White competent to proceed after the following exchange:

3

> THE COURT: . . . have you ever been treated for any type of mental condition?
> DEFENDANT WHITE: Yes, sir.
> THE COURT: When was that treatment?
> DEFENDANT WHITE: I recently just left Miami FDC for evaluation. Before then, I was to go to CMC in Charlotte, South Carolina.
> THE COURT: Mr. Stepp, are you familiar with that?
> MR. STEPP: Yes, sir, I am. He --
> THE COURT: Did we get a report?
> MR. STEPP: The Court did. There was a competency hearing. The report found him competent to stand trial, and the magistrate also affirmed that. My personal dealings with him are that he is competent, based on my conversations. I would say that on a previous incarceration at the Bureau of Prisons, he had a psychiatric examination some years ago. Of course, he was ordered for this, after he was picked up on this charge, in August.
> THE COURT: Are you -- sir, are you receiving any type of treatment now for anything?
> DEFENDANT WHITE: The only thing I'm doing is taking medication. As far as treatment, a psychiatrist or psychologist --
> THE COURT: So you see a psychiatrist?
> DEFENDANT WHITE: No. Not yet, sir.
> THE COURT: You're not? So you don't have a -- any type of interaction with a physician at this time?
> DEFENDANT WHITE: Not right now.
> THE COURT: Are you taking any medications?
> DEFENDANT WHITE: Yes, sir. I'm on seven medicines.
> THE COURT: Seven medicines?
> DEFENDANT WHITE: Yes, sir.
> THE COURT: All right. Do those medications interfere in any way with your ability to understand what's taking place?
> DEFENDANT WHITE: I don't think it would, Your Honor.
> THE COURT: Other than those medications this morning, are you under the influence of any type of alcohol, drugs, or any other medicine?
> DEFENDANT WHITE: No, sir. I'm not.
> THE COURT: Mr. Stepp, I think you have already answered the question that you feel that he is competent to proceed; is that correct?
> MR. STEPP: Yes, sir. He's been very coherent in his conversation with me about this case and the potential resolution.

(Id. at 6-8 ECF No. 70.)  Further, he stated that no one had forced or coerced him into pleading guilty and that he was pleading guilty because he was guilty.  (Id. at 23, ECF No. 70.)  In

addition, White answered, "no, sir" when asked "if anyone has promised you what your actual sentence [would] be[.]"  (Id. at 25-26, ECF No. 70.)

> [I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated–permit[ting] quick disposition of baseless collateral attacks[.]

United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (citation and internal quotation marks omitted).

There are no extraordinary circumstances present in this case to support White's conclusory ineffective assistance of counsel claims.  There was no basis for counsel to raise any issue regarding White's competence at the time the offenses were committed, White's contact with the bank robbery division, or that the Government promised White a "decent" sentence.  White's mental health evaluation indicated that White has a chronic and serious mental health condition and White was found competent at his competency hearing.  (Psychiatric Report 9-11.)  White's mental health evaluation found that White's

> history, current mental state, and collateral information do not suggest the presence of a psychological symptoms, although there is a severe mental illness, that would impair his ability to understand the nature and quality or the wrongfulness of his actions.  Therefore, it is the examiner's opinion that Mr. White was criminally responsible for his behavior at the time of the offense.

(Id. at 11.)

White has failed to identify any factual basis to support his conclusory claims, including any specific factual allegations regarding what his counsel failed to inform the court about his mental health issues, his contact with the Bank Robbery Division, his competence at the time he committed the offenses at issue, and the personal issue White wished to discuss with the court in private regarding prior abuse.  Blackledge v. Allison, 431 U.S. 63, 74 (1977) (explaining

5

"[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.") (citations omitted); see, e.g., Medley v. United States, Civil Action No. DKC 2008-1477, 2009 WL 2168940, at *4 (D. Md. July 17, 2009) (unpublished) (§ 2255 motion alleged ineffective assistance of counsel claims and court denied motion, finding that "[p]etitioner must have more than mere allegations to create factual disputes with the sworn testimony she offered in her plea proceeding."). In addition, White has failed to state any facts, additional information, or advice that would have caused him to change his decision to plead guilty and proceed to trial. Based on the foregoing, the truth of White' sworn statements during his plea hearing is conclusively established.

With respect to White's claim that his counsel was ineffective for allowing information regarding his cooperation to be discussed in front of other inmates in the courtroom, this claim is wholly without merit. (§ 2255 Mot. 8, ECF No. 82.) A review of the record revealed no detailed discussion regarding any cooperation by White. The only evidence regarding White's cooperation is gleaned from the Government's summary of the facts at White's guilty plea hearing, as follows:

> On August 27, 2018, Mr. White entered a federally-insured Bank of America in Clemson. He was wearing an apron, sunglasses, a Clemson baseball hat. After talking with a bank employee in her office, he approached the teller counter and presented the teller with a note demanding money and threatening that he had a gun. The teller complied, giving him federally-insured money from the top drawer. Mr. White, then, demanded that she provide money from her bottom drawer or he would shoot her and everyone in the bank. Again, the teller complied, giving him the money from the bottom drawer. Mr. W[hite] was observed leaving the bank in a silver Toyota with a Kentucky license plate. The car was spotted a short time later by the Clemson Police Department. A high-speed chase ensued. During the pursuit, Mr. White got out of the car and ran into some woods. He was attracted by K-9 and located in the woods nearby and a bag of the money taken in the robbery.

> Later, Mr. White was interviewed by the FBI. He admitted to the robbery in Clemson at the Bank of America. He also admitted to robbing other banks in South Carolina and elsewhere.

(Guilty Pl. Tr. 29-30, ECF No. 70.) White stated that he agreed with this summary. (Id. at 30, ECF No 70.) There was no basis for White's counsel to object to the summary by the Government regarding White's admission to the bank robberies.

In addition, to the extent White is challenging his counsel's actions at sentencing, there is no evidence to support an ineffective assistance of counsel claim. To establish ineffective assistance of counsel at sentencing, a movant must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999). At his sentencing, with respect to White's mental health issues, White's counsel raised an issue regarding the fact that White had not received his morning medications, including his medication for his mental health issues, and White indicated that he wished to proceed with the hearing. White's counsel stated that he detected no problems with White's ability to understand the proceedings. Further, White's counsel stated as follows:

> I asked him when was the last time he had it and he told me he had it last evening. So he has not -- he's not been denied the medication for any extended period. And he told me downstairs that he also wanted to go forward with this today, that he felt okay and competent to be able to deal with this whole situation up here today.

(Sentencing Tr. 5, ECF No. 69.) White agreed with his counsel's statements about his competence. In addition, during White's sentencing hearing, his mental health issues were specifically addressed by counsel and counsel asked that the court consider White's mental health issues in determining his sentence. Counsel stated in part as follows:

> He was sent off for a psychiatric evaluation after he was arrested on this case in Clemson back in August, and he was found competent to stand trial. And that's not an issue before the Court. But I think it offers some -- some explanation, or at least some light, on what's going on in this man's head.

7

> ***
>
> But at any rate, he's -- he is -- he's got issues, medically speaking, mental health issues. And I would just ask the Court to consider that in imposing a sentence on him today.

(Id. at 12, 14 ECF No. 69.)  Further, White raised concerns regarding his mental health with the court.  (Id. at 14-16, ECF No. 69.)  In addition, White's Presentence Investigation Report ("PSR") details his medical history with respect to inpatient mental health treatments and attempted suicide.  (PSR ¶¶ 84-93.)  White had no objections to this information in the PSR and further did not raise any objection that information regarding prior abuse was omitted from the PSR.

White also alleges that his counsel was ineffective in failing to verify his prior convictions and to correct an error that he did not commit the June 23, 2017 bank robbery the day after being released from custody.  (§ 2255 Mot. 9, ECF No. 82.)  There is no evidence to support White's claims that his prior convictions listed in the PSR are inaccurate.  Further, White alleges that he did not commit the June 23, 2017 bank robbery the day after his release from prison.  However, White admitted this during his sentencing hearing.  ("THE COURT: You still robbed three banks. You did the first one the day after you got out of prison.  THE DEFENDANT: Yes, sir."  (Sentencing Tr. 15, ECF No. 69).)

Based on the foregoing, White's conclusory claims, lacking in any factual basis, are wholly insufficient to overcome his sworn testimony during his plea hearing.  Further, there is no evidence that White's counsel was deficient or that White was prejudiced by counsel's actions during sentencing.

Therefore, it is

**ORDERED** that White's § 2255 motion, docket number 82, is summarily dismissed.  It is further

**ORDERED** that a certificate of appealability is denied because White has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.<br>Senior United States District Judge

Greenville, South Carolina
July 1, 2020

**NOTICE OF RIGHT TO APPEAL**

The Movant is hereby notified that he has the right to appeal <u>this order</u> within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.